## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 22 2015, 6:17 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT *PRO SE*

Jeffrey E. Akard
Marion, Illinois

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey E. Akard,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

October 22, 2015

Court of Appeals Case No.
79A05-1411-PC-553

Appeal from the Tippecanoe
Superior Court

The Honorable Thomas H. Busch,
Judge

Trial Court Cause No.
79D02-1101-PC-1

**Bradford, Judge.**

# Case Summary

[1] Over the course of approximately eighteen or nineteen hours beginning on September 9, 2006, Appellant-Petitioner Jeffrey E. Akard brutally raped and battered A.A. while confining her in his Lafayette apartment. Following a three-day jury trial, Akard was convicted of two counts of Class A felony rape and Class A felony criminal deviate conduct, one count of Class B felony rape and Class B felony criminal deviate conduct, two counts of Class B felony criminal confinement, and two counts of Class C felony battery. The trial court imposed an aggregate ninety-three-year sentence. Akard's convictions were affirmed on direct appeal. This court modified Akard's sentence to an aggregate term of 118 years. The Indiana Supreme Court, however, subsequently modified Akard's sentence to an aggregate term of ninety-four years.

[2] Akard filed a petition for post-conviction relief ("PCR") in January of 2011. On October 30, 2014, the post-conviction court issued an order denying Akard's petition. Akard then appealed, arguing that the post-conviction court erroneously found that he did not receive ineffective assistance of trial or appellate counsel. Concluding that the post-conviction court did not err in determining that Akard failed to prove that he suffered ineffective assistance from either his trial or appellate counsel, we affirm.

# Facts and Procedural History

[3]     Our opinion in Akard's prior direct appeal, which was handed down on March 30, 2010, instructs us as to the underlying facts and procedural history leading to this post-conviction appeal:

> In the early hours of September 9, 2006, A.A. was in Lafayette, Indiana, and met Akard as he was walking down the street. Because he was purportedly drunk, Akard asked A.A. to walk him home so that he would not be charged with public intoxication, and A.A. obliged. After a fifteen minute walk, the two arrived at Akard's house at approximately 2:15 a.m., and A.A. went into the house so that she could use the bathroom. Once inside, Akard used a key to lock the deadbolt. The two then sat down on the couch and started a conversation, which included A.A. telling Akard that she was currently homeless and without any money. The topic eventually turned to Akard offering A.A. $150 for a "head job." Trial transcript at 67. A.A. agreed and proceeded to perform an act of oral sex on Akard. During the act, Akard grabbed A.A.'s head and forced her onto him to the point A.A. was choking and had "snot coming out of [her] nose." Tr. at 72. Akard continued to force A.A.'s head back and forth until he lifted her up and told her that "today was the day [she] was gonna die." *Id.*
>
> A.A. repeatedly begged Akard to let her leave, but Akard ordered her to the bathroom and proceeded to cut A.A.'s t-shirt and bra in order to remove them. Akard then ordered A.A. to remove her pants and go into the bedroom. Despite A.A.'s repeated pleas to leave, Akard told her that she could not leave. Once in the bedroom, Akard said that he had "a toy" for A.A., reached under the bed, and then used a taser gun on A.A.'s back and heart area approximately five times. Tr. at 81. When A.A. began to scream, Akard reached under the bed for his handgun and held it to A.A.'s head.
>
> A.A. then sat on the bed while Akard handcuffed her arms behind her back. Akard then forced A.A. to take some pills with

Mountain Dew. During the process, A.A. spilled some of the Mountain Dew, causing Akard to become upset and hit A.A. in the head. Akard then ordered A.A. back to the bathroom where Akard undressed and they both entered the shower. While in the shower, Akard made A.A. kneel so that he could urinate in her mouth. A.A. spit out the urine, which upset Akard. Akard then hit A.A., knocking her unconscious.

When she awoke, she was laying face down on Akard's bed and now had zip ties restraining her ankles. As A.A. faded in and out of consciousness, Akard raped her vaginally and anally a total of four to five times. To prevent A.A. from screaming, Akard placed a golf ball in A.A.'s toothless mouth and then used a sock as a gag. While A.A. was bound, Akard used sex toys on both of them. At one point, A.A. woke up and noticed stockings on her legs that were not hers. During another instance of consciousness, A.A. realized that she had a metal, link chain tied around her and tied to the door, so that the chain would rattle every time she moved.

At another point when A.A. was only bound in handcuffs, Akard called out to A.A. from the living room, telling her to come to that room. Akard then showed A.A. "a lot" of pictures of child pornography on his laptop. Tr. at 99. During this display, Akard said that he had "done plenty" of children. Tr. at 100.

When A.A. finally woke the next day, she was in the bed and the chain was still around her. Pretending not to remember what happened, she commented to Akard, "we must have had some really kinky sex last night[.]" Tr. at 103. A.A. then indicated that she needed to leave immediately because she had to pick up her children. Akard responded, "Are we okay?" *Id*. A.A. indicated affirmatively. Akard then told A.A. that she had to take a shower before she left, which she did but purposely did not use soap.

Immediately after leaving Akard's apartment on the afternoon of September 9, 2006, A.A. ran to a neighboring house to obtain

assistance. After A.A. told the neighbor that she was held against her will for nineteen hours and displayed her wounds, the neighbor called 9-1-1. After police responded and initially interviewed A.A., she was taken to the hospital where samples were collected for a rape kit analysis and pictures of A.A.'s wounds were taken.

The police obtained a search warrant for Akard's apartment based on A.A.'s statement and executed it early on the morning of September 10, 2006. When the officers breached the door, Akard was sitting on his couch, viewing pornography on his computer while masturbating. Items recovered from the apartment search included a set of keys on a key chain including a handcuff key, zip ties, a woman's Old Navy shirt that had been cut as well as a bra, a pair of handcuffs, a metal link chain, two golf balls and "fairly stretchable" socks, a stun gun, bottles of Tylenol, Tylenol PM, Doxycycline, Alprazolam and Hydrocodone, A.A.'s identification card and cell phone, a collection of sex toys, a BB gun, an air rifle, a handgun, purple and orange rope that was tied to the bed frame, blue stockings, and a laptop containing approximately 2900 pornographic pictures.

[Appellee-Respondent the State of Indiana (the "State")] initially filed charges against Akard on September 14, 2006, but later filed a *nolle prosequi* motion to dismiss the case without prejudice. The motion was granted. On October 1, 2008, the State re-filed charges against Akard of three counts of Rape, two as Class A felonies and one as a Class B felony, three counts of Criminal Deviate Conduct, two as Class A felonies and one as a Class B felony, two counts of Criminal Confinement, as Class B felonies, and two counts of Battery, as Class C felonies. After a three day trial, a jury found Akard guilty as charged. The trial court sentenced Akard to an aggregate sentence of ninety-three years.

*Akard v. State*, 924 N.E.2d 202, 205-06 (Ind. Ct. App. 2010), *aff'd on reh'g*, *trans. granted*, *aff'd in part, vacated in part*, 937 N.E.2d 811 (Ind. 2010). On appeal, we affirmed Akard's convictions but revised his aggregate sentence to 118 years. *Id*. at 212. The Indiana Supreme Court granted transfer and affirmed Akard's convictions and modified Akard's sentence to ninety-four years. *Akard*, 937 N.E.2d at 814.

[4] On January 26, 2011, Akard filed a *pro-se* PCR petition. In this petition, Akard claimed that he was received ineffective assistance from his trial, appellate, and post-conviction counsel. Akard also claimed that newly-discovered evidence cast doubt on his convictions. On October 30, 2014, the post-conviction court issued an order denying Akard's petition. This appeal follows.

# Discussion and Decision

[5] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

# I. Ineffective Assistance of Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the

adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[8] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

[9] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim

may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

## A. Ineffective Assistance of Trial Counsel

[10] Initially, we note that Akard's ineffective assistance claims are not raised in a particularly clear manner. That being said, we will do our best to decipher Akard's arguments on appeal. Akard seems to argue that his trial counsel provided ineffective assistance in an overwhelming number of ways, including (1) failing to object to pornographic images found on Akard's computer being admitted into evidence; (2) failing to question A.A. about a prior rape accusations she levied against another individual; (3) waiving Akard's right to a speedy trial; (4) failing to establish the exact time at which A.A.'s sustained certain bruises; (5) failing to request a continuance because neither Akard nor his counsel were in possession of Akard's legal notes at the beginning of Akard's trial; (6) failing to request a separation of witnesses; (7) failing to ensure that the jury was made up of a fair cross-section of the community; (8) acknowledging Akard's federal convictions; (9) failing to challenge the veracity of the search warrant; (10) failing to object to the admission of or seek to suppress certain evidence that was found on his computer; (11) being unprepared for trial; (12) failure to report alleged violations of the trial court's discovery order to the trial court; (13) failing to have the recording of the 911 emergency call replayed before the jury; (14) failing to object to the type of paper that certain exhibits were printed on; (15) failing to investigate potential plea possibilities; (16) failing to seek information or advice from Akard and

present said information to the trial court during sidebar discussions; (17) failing to object to the proffered jury instructions; and (18) failing to demand that the jury form for one of the counts be signed by the jury foreman.

### 1. Admission of Pornographic Images Found on Akard's Computer

Akard argues that his trial counsel was ineffective for failing to suppress certain pornographic images that were found on his computer. Specifically, Akard claims that the challenged images, some of which involved children, should have been suppressed because they were inadmissible under Indiana Evidence Rule 404(b).[1]

Akard challenged the admission of the pornographic images on direct appeal, arguing that they were inadmissible under Indiana Evidence Rule 404(b). After considering Akard's challenge, we concluded as follows:

> The pictures admitted as State's Exhibit 154 are pornographic images selected from Akard's computer that depict females of various ages that are bound and gagged, similar to A.A.'s description of how Akard bound her. At trial, Akard conceded that the pictures had "some basic relevance," but argued that the pictures unfairly prejudiced him because some depict young girls. Tr. at 333. These pictures have more relevancy than conceded. The Exhibit 154 pictures are probative of Akard's plan to make A.A. resemble the pictures stored on the laptop. It is undisputed

---

[1] Evidence Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This evidence, however, "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evid. R. 404(b)(2).

that A.A.'s genitalia had been shaved during the incident and that she is petite, standing only five feet tall and weighing ninety pounds. A.A. also testified that at some point she woke to find stockings on her legs. During the incident, Akard even looked at some of the pictures. Due to the similarity between the pictures' content and what Akard did to A.A., the danger of unfair prejudice that may have resulted from the exhibit does not substantially outweigh the probative value. Therefore the trial court did not abuse its discretion in admitting Exhibit 154.

*Akard*, 924 N.E.2d at 207. The Indiana Supreme Court summarily affirmed our conclusion in this regard.

[13] The conclusion that the pornographic photographs were admissible as evidence at trial is now the law of the case. *See generally, Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000) (providing that as a general rule, when a court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in post-conviction proceedings). Akard cannot "escape the effect of claim preclusion merely by using different language to phase an issue and define an alleged error." *Id.* Thus, having unsuccessfully challenged the admissibility of the pornographic photographs under Indiana Evidence Rule 404(b) on direct appeal, Akard is precluded from merely rephrasing said challenge to allege that his trial counsel provided ineffective assistance by failing to have the challenged evidence excluded from trial.

### 2. *Evidence Relating to Prior Rape Accusations Levied by A.A.*

[14] Akard also claims that his trial counsel provided ineffective assistance by failing to question A.A. about prior rape accusations she had levied against another

individual. In disposing of this claim, the post-conviction court found as follows:

> The fact that the victim had made another report of rape against another party that was not prosecuted by the State does not prove that the victim was lying about petitioner's conduct in the instant case. Furthermore, evidence offered to prove that a victim or witness engaged in other sexual behavior or to prove a victim's or witness's sexual predisposition, was barred under Indiana Rule of Evidence 412. The report of the other allegation, which petitioner focuses on where he states, "the accusations against the petitioner is an effort by the victim to hide or explain a situation that can only have resulted from sexual activity, the same as [the victim's] other cases" would have fallen under [Indiana Rule of Evidence] 412, and such an argument would not have been allowed at trial.

Appellant's Amd. App. p. 186 (first set of brackets in original, last set of brackets added).

> The admission of evidence relating to a victim's past sexual conduct is governed by Indiana Evidence Rule 412, which is commonly referred to as the Rape Shield Rule. Rule 412 provides that, with very few exceptions, in a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted into evidence…. [However,] a common law exception has survived the 1994 adoption of the Indiana Rules of Evidence, and this exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that his or her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. *State v. Walton*, 715 N.E.2d 824, 828 (Ind. 1999). Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved. *Candler v. State*, 837 N.E.2d 1100, 1103 (Ind. Ct. App. 2005).

*State v. Luna*, 932 N.E.2d 210, 212-13 (Ind. Ct. App. 2010) (footnote omitted).

[16] Akard seems to claim that evidence relating to the prior rape allegations made by A.A. would have been admissible at trial because the prior rape accusations made by A.A. were demonstrably false. In making this claim, Akard relies on the fact that the State ultimately dropped the charges brought against A.A.'s alleged attacker. However, we note that a prosecutor is vested with broad discretion in the performance of his or her duties, including the decision whether to prosecute a suspect. *See Allen v. State*, 813 N.E.2d 349, 368 (Ind. Ct. App. 2004), *trans. denied*. We believe, however, that a prosecutor may choose to drop charges against an alleged perpetrator for many reasons, such as insufficient evidence, and the fact that a prosecutor chose to drop charges, without more, does not prove that the allegations raised against the individual were false.

[17] The record before us on appeal does not indicate why the prosecutor chose to dismiss the charges filed in connection to A.A.'s prior rape allegation. Akard has also failed to provide evidence showing that A.A. has ever admitted that the prior rape allegations were false or that the allegations were subsequently proven to be false. As such, we conclude that Akard has failed to demonstrate that A.A.'s prior accusations were demonstrably false. Because Akard has failed to prove that evidence relating to the prior rape accusations levied by A.A. would have been admissible at trial, we must conclude that his counsel was not ineffective for failing to present such evidence during trial.

### 3. Speedy Trial

[18] Akard seems to claim that his trial counsel provided ineffective assistance by waiving Akard's right to a speedy trial. With respect to Akard's speedy trial claim, his trial counsel averred that Akard's speedy trial claim "is without merit, as he was in federal custody for much of the pendency of this cause, and was not being held on his Tippecanoe County case." Appellant's App. p. 247. The post-conviction court reviewed this claim and found as follows:

> 3. Petitioner was not denied a speedy trial in this case, as he was in federal custody on child pornography charges, and not in State custody, for the pendency of most of this case. While this is normally an issue for direct appeal, the Court will address it here since petitioner has raised it as grounds for relief.
>
> 4. Petitioner was originally charged on September 14, 2006, in cause number 79D02-1609-FA-16 and filed a speedy trial motion on April 3, 2007, which was withdrawn on May 15, 2007 and the trial date was continued. By that time petitioner was in federal custody, and the trial was reset to August 7, 2007. On July 7, 2007, the petitioner waived Criminal Rule 4 and speedy trial rights, and the trial was continued by agreement until November 2007, to allow the federal case to be resolved. On November 1, 2007, the State filed *nolle prosequi*[2] in FA-16.
>
> 5. On October 2, 2008, the State refiled the case in 79D02-0810-FA-36, and petitioner was produced from federal custody by Writ of Habeas Corpus. A trial date was set for January 13,

---

[2] "*Nolle prosequi*" means to have a case dismissed. *See* BLACK'S LAW DICTIONARY (10th ed.) p. 1210.

2009, and petitioner was again produced under Habeas Corpus, and the trial was conducted from January 13 to 15, 2009.

6.     During much of the pendency of FA-16, petitioner was in federal custody, and waived CR4 on July 7, 2007.  During that period 296 days ran against the State, although that total includes time the defendant was also held in federal custody, being held in the Lake County jail.  The period from October 2, 2008, to January 13, 2009, would not run against the State, since the petitioner was being held in federal custody having been sentenced in his child pornography case.

7.     As the Indiana Supreme Court has long acknowledged, Criminal Rule 4 (in that particular case CR4(B)) is limited in application when a defendant is held or incarcerated in another jurisdiction:

> While it may be reasonable to impose the time limit of Criminal Rule 4(B) when a criminal defendant is within the exclusive control of the State of Indiana, for purposes of certainty and ease of administration of the rule, it becomes irrational to extend its application to a defendant who is incarcerated in another jurisdiction which has an interest in retaining the defendant in its custody, either for trial or to serve a sentence.

*Smith v. State*, 368 N.E.2d 1154, 1156 (Ind. 1977).

8.     Therefore, petitioner's Criminal Rule 4 claim is overruled as to this petition.

Appellant's Amd. App. pp. 184-85 (first emphasis added).

The inquiry as to whether a defendant has been denied a speedy trial under the Sixth Amendment involves balancing a number of factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) any

resulting prejudice to the defendant. *Danks v. State*, 733 N.E.2d 474 (Ind. Ct. App. 2000) (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)), *trans. denied*. "[N]one of the four factors ... [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." [*Barker*, 407 U.S. at 533].

*Fisher v. State*, 933 N.E.2d 526, 530 (Ind. Ct. App. 2010) (first two sets of brackets in original, last set of brackets added).

[20] According to Akard's argument on appeal, neither the State nor his trial counsel knew that he was in federal custody on May 7, 2007, the date that Akard's trial was scheduled to begin. When Akard's whereabouts were discovered on May 15, 2007, Akard's trial counsel withdrew Akard's request for a speedy trial. Akard claims that he was prejudiced by the withdrawal of his request for a speedy trial. Akard further claims that he was prejudiced by the delay that resulted from the State's act of dismissing and subsequently refiling the charges against Akard.

[21] The record, however, is unclear as to whether federal authorities would have transferred Akard to State custody while he was being held and was awaiting trial on federal criminal charges. The record seems to indicate that the State charges were refiled soon after the federal case was resolved and Akard was produced from federal custody for hearings related to and his underlying trial. Given the uncertainty surrounding whether the federal authorities would have transferred Akard to State authorities for the purpose of conducting the

underlying trial prior to the conclusion of the federal criminal proceedings together with the fact that Akard's right to a speedy trial would not apply while Akard was in federal custody, *see Spalding v. State*, 992 N.E.2d 881, 887 (Ind. Ct. App. 2013) (providing that if a defendant who is incarcerated in another jurisdiction is not brought into Indiana's exclusive control, Criminal Rule 4 does not apply), *trans. denied*, we conclude that Akard has failed to prove that he was prejudiced by the waiver of his speedy trial rights. Akard, therefore, has failed to prove that his trial counsel provided ineffective assistance in this regard.

### 4. Exact Time When Bruises Inflicted

[22] Akard also seems to claim that his trial counsel was ineffective for failing to elicit testimony from witnesses which would pinpoint the exact time during A.A.'s confinement in which A.A. sustained certain bruises and injuries. Akard appears to argue that his defense would have been bolstered by being able to establish the exact time during A.A.'s confinement that she sustained her injuries. Akard, however, does not appear to argue that A.A. sustained these injuries from any independent source. Given that the evidence demonstrated that Akard confined A.A. to his apartment and assaulted A.A. over the course of approximately eighteen or nineteen hours, we believe that even if it were possible to pinpoint the exact time during A.A.'s confinement at which each bruise was sustained, such evidence would be irrelevant as it would not have had any influence on the question of whether the injuries were inflicted by Akard. Akard, therefore, was not prejudiced by his trial counsel's

alleged failure to elicit testimony from witnesses relating to the exact time at which A.A. sustained her injuries. Akard's trial counsel did not provide ineffective assistance in this regard.

### 5. *Request for Continuance to Locate Akard's Legal Notes*

Akard also seems to claim that his counsel was ineffective for failing to request a continuance of Akard's trial to allow Akard or his counsel to locate Akard's legal notes. Akard, however, has failed to establish that his legal notes would have been of any benefit to either him or his trial counsel. Akard, therefore, has failed to establish that he was prejudiced by not having his legal notes available at the beginning of his trial. His trial counsel, therefore, did not provide ineffective assistance by failing to request a continuance for the purpose of trying to obtain said legal notes.

### 6. *Request for Separation of Witnesses*

Akard also appears to claim that his trial counsel provided ineffective assistance by failing to request a separation of witnesses. In considering this claim below, the post-conviction court found as follows:

> The Court finds no evidence that a decision not to move for separation of witnesses prejudiced the petitioner, or was ineffective, or that the State's witnesses colluded on their testimony as a result. Petitioner raises this assertion but fails to prove any evidence that this happened, or provide authority that characterizes such a tactic as ineffective per se.

Appellant's Amd. App. p. 188. Similarly, Akard provides no evidence on appeal to support his assertion that the State's witnesses colluded on their testimony during trial. Akard's assertion that certain witnesses may have colluded on their testimony, without more, is insufficient to prove prejudice. As a result, we conclude that Akard failed to prove that he suffered ineffective assistance of counsel in this regard.

### 7. Jury Selection

[25] Akard seems to claim that his trial counsel provided ineffective assistance by failing to ensure that the jury was made up of a fair cross-section of the community. In raising this claim, Akard seems to assert that the jury did not fairly represent a cross-section of the community and was in some way tainted because many members of the jury had children.

[26] In disposing of this claim below, the post-conviction court found as follows:

> There is no evidence of juror bias. The fact that several jurors were parents with young children does not show that they were biased against the defendant, nor that they could not be impartial jurors.

Appellant's Amd. App. p. 185. Akard does not present any evidence supporting his personal belief that the jury was in some way tainted or biased against him. Akard has not shown that the jury did not represent a cross-section of the community or that his trial counsel performed inadequately during jury selection. Akard, therefore, has failed to prove that his trial counsel provided ineffective assistance in this regard.

### 8. Acknowledging Federal Convictions

Akard claims that his trial counsel provided ineffective assistance by acknowledging Akard's federal convictions before the jury. In disposing of this claim below, the post-conviction court found as follows:

> This Court finds that trial counsel acknowledging petitioner's child pornography conviction was a strategic decision, given the fact that this conviction was already known in the community, and counsel could not assume that no jurors would recall the federal case. Counsel chose to address the matter at the outset rather than risk it coming up later in the trial (and risk the appearance that the petitioner had attempted to conceal the matter from the jury). This Court cannot say that this was ineffective, given the circumstances.

Appellant's Amd. App. p. 187. Akard has presented no evidence on appeal to prove that trial counsel's decision to acknowledge the federal convictions was anything other than a tactical decision aimed at minimizing any potential negative impact later disclosure might have on the jury. We will not second-guess trial counsel's tactical decisions on appeal. *See generally, Smith*, 765 N.E.2d at 585 (providing that we will defer to counsel's strategic and tactical decisions).

### 9. Veracity of the Search Warrant

Akard appears to also claim that his trial counsel provided ineffective assistance by failing to challenge the veracity of the search warrant issued in the underlying case. In disposing of Akard's claim relating to the search warrant, the post-conviction court found that "The search warrant in this case was duly

issued for the petitioner's residence, identifying it with particularity[.]" Appellant's Amd. App. p. 185. Akard seems to argue that he was prejudiced because the warrant was amended to accurately reflect Akard's date of birth and also the date the authorities actually entered his apartment. Akard asserts that although the warrant was originally dated for September 9, 2006, authorities did not actually enter his apartment until his landlord arrived to let them in at approximately 2:00 a.m. on September 10, 2006. Akard has failed to provide any indication as to how he was prejudiced by the correction of his date of birth and the date of entry into his apartment on the warrant. Akard, therefore, has failed to establish that he suffered ineffective assistance of counsel in this regard.

### 10. Contents of Computer

[29] Akard also appears to claim that his trial counsel provided ineffective assistance by failing to object to the admission of or seek to suppress certain evidence that was found on his computer. In finding this claim to be without merit, the post-conviction court found as follows:

> There is no evidence of unlawfully obtained evidence in this case. Had counsel chosen to, he could have moved for suppression, but with respect to the items seized under color of warrant, his motion would have failed. Counsel was not ineffective in this respect.

Appellant's Amd. App. p. 187. The post-conviction court further found that:

> Failure to suppress evidence absent a constitutional issue is not an indicator of ineffectiveness. Petitioner has failed to show grounds on which a court would have suppressed any of the evidence gathered by the State. In the absence of at least a theory how counsel would have accomplished this, petitioner again fails to meet his burden.

Appellant's Amd. App. p. 188. Again, in order to prove ineffective assistance of counsel due to a failure to challenge the admission of evidence, whether by objection or motion to suppress, a petitioner must prove that an objection would have been sustained if made. *See generally, Kubsch v. State*, 934 N.E.2d 1138 1150 (Ind. 2010) (providing that in order to prove ineffective assistance of counsel due to the failure to object, the petitioner must prove that an objection would have been sustained); *see also Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007) (same). Akard has failed to do so.

[30] Further, Akard does not explain what evidence was allegedly found on his computer other than the above-discussed pornography photographs. As we have discussed above, Akard has failed to prove that his trial counsel provided ineffective assistance with regard to the pornographic images found on Akard's computer.

### 11. Counsel's Preparedness for Trial

[31] Akard additionally claims that his trial counsel provided ineffective assistance because counsel allegedly failed to review certain pieces of evidence and, as a result, was unprepared for trial. With respect to his preparedness for trial, Akard's trial counsel averred as follows:

11. Contrary to petitioner's assertion, his case was thoroughly investigated and zealously presented, in view of the State's claim against him.

****

14. The bulk of petitioner's affidavit, and the gravamen of his petition, is that I should have mounted a scorched-earth campaign against the State's evidence and the victim, and that I should have argued alternative interpretations to the jury consonant with petitioner's take on the case.

15. Frankly, many of petitioner's arguments would have reduced the chances of his acquittal even more, had they been made in open court. As counsel, I am expected to make determinations of strategy in the presentation of a defense. This does not include pushing every argument to the point of absurdity.

16. Petitioner has his own perception of the events that took place, but I was constrained by the evidence to make a plausible argument for acquittal or to at least mitigate petitioner's culpability.

****

18. Petitioner clearly has his own interpretation of much of the evidence. To the extent my professional judgment allowed, I presented some of these arguments, but to have presented all of the petitioner's arguments, again in my opinion, actually would have convinced the jury even more of his guilt rather than his innocence.

****

20. In my professional opinion, I did the best I could have done in this case, dealing with the facts and evidence which I knew would be admitted at trial, making those arguments that would have the most credibility with the jury and not simply

show the defense to be contrarian, arguing over every piece of evidence.

Appellant's App. p. 248. In finding Akard's claim to be without merit, the post-conviction court found as follows:

30.    Petitioner asserts that counsel did not adequately prepare for trial, but this Court finds that counsel took appropriate measures to prepare, conducted necessary investigations, and was well-prepared for trial.

**** 

32.    The 'failure to investigate' claim is related to petitioner's claim that counsel was not adequately prepared. In fact counsel did investigate matters he felt could lead to an acquittal, or mitigation of culpability. That counsel did not conduct the investigations that petitioner thinks would have been fruitful is not evidence of ineffective assistance of counsel. This is equally true of the blue-stockings issue, as with the bathroom window issue.

33.    This Court finds that counsel investigated those witness brought to his attention by petitioner prior to trial, and that he made appropriate investigations of their probable testimony. The decision whether or not to call a witness is a strategic decision, based upon an attorney's experience as a litigator. Petitioner furthermore does not address what their probable testimony would have been, whether they would have been credible to the jury, and that their testimony would have out-weighted the State's evidence.

34.    Petitioner alleges that counsel failed to review transcripts and depositions, which is not convincing evidence that counsel failed to adequately prepare. His claim that this issue applies to "all witnesses of trial" is so broad and vague as to be unpersuasive. It is dubious that engaging in cross examination

before the jury regarding the price of an act of oral sex would have convinced the jury of petitioner's innocence. Petitioner fails to show where an alleged omission impaired the defense of his charges.

****

39.   Counsel's "failure" to raise "significant and obvious issues" appears to be a reiteration of petitioner's complaint that counsel did not make the same arguments and judgments he himself would have had he presented his own case. Petitioner's attempt, for instant, to recast himself as the victim in this affair was a theory of the case his counsel was not required to adopt or to argue. Petitioner's argument that had counsel excoriated the victim that he would have been acquired is unconvincing.

Appellant's Amd. App. pp. 188-89.

[32]   Akard has presented no clear argument as to what more counsel could reasonably have done to prepare for trial. Likewise, he has pointed to no evidence that suggests that the outcome of his trial would have been different had his trial counsel examined any additional evidence or further prepared for trial in any way. As such, Akard has failed to establish that he suffered ineffective assistance of trial counsel in this regard.

### 12. Alleged Discovery Violations

[33]   Akard additionally claims that his trial counsel provided ineffective assistance by failing to "bring up" certain alleged violations of the trial court's discovery order. Specifically, Akard appears to argue that his trial counsel failed to inform the trial court the State had withheld certain evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

[34]     To prevail on a *Brady* claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the suppressed evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Bunch v. State*, 964 N.E.2d 274, 297 (Ind. Ct. App. 2012), *trans. denied*. Evidence is "material" under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id*. And a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*. However, the State will not be found to have suppressed material evidence if it was available to a defendant through the exercise of reasonable diligence. *Id*.

*Shelby v. State*, 986 N.E.2d 345, 358 (Ind. Ct. App. 2013), *trans. denied*.

[35] Although his argument is difficult to follow, Akard appears to allege three violations of the trial court's discovery order. The first is that the State failed to disclose the criminal records of two of the witnesses included on the State's list of potential witnesses that was provided during discovery. The second is that the State failed to disclose a photograph of a bathroom window in Akard's apartment, which Akard claims rebuts the State's theory that A.A. was trapped in Akard's apartment. The third is that the State failed to disclose pictures of the victim's injuries and/or information about prior instances of domestic abuse involving the victim.

[36] As to all three allegations, Akard has failed to point to anything in the record suggesting that the State violated the trial court's discovery order or *Brady* by keeping any evidence from the defense. Akard has also failed to provide that any of the challenged evidence was favorable to the defense or material to an

issue at trial. Further, to the extent that Akard asserts that the photograph of the bathroom window is material because it allegedly rebuts the State's theory that A.A. was confined to Akard's apartment for a period of approximately eighteen or nineteen hours, we do not believe that it was reasonably probable that the outcome of Akard's case would have been different if the defense would have had access to a photograph depicting that there was a window in the bathroom of Akard's apartment. Akard presents no evidence relating to the size and location of the window, *i.e.*, how high the window was from the ground.

Akard has failed to establish that he was prejudiced by his trial counsel's failure to report the discovery and/or *Brady* violations allegedly committed by the State to the trial court. Akard, therefore, has failed to prove that he suffered ineffective assistance in this regard.

### 13. Recording of 911 Call

Akard also appears to argue that his trial counsel provided ineffective assistance by failing to have the 911 call replayed before the jury. In finding that Akard's trial counsel did not provide ineffective assistance in this regard, the post-conviction court found as follows:

> This Court cannot evaluate petitioner's due process argument about crucial evidence contained in a 911 call, as he does not state what that evidence was or prove how it would have affected the outcome of the trial.

Appellant's Amd. App. p. 186. Akard presents no evidence relating to the contents of the 911 call. Thus, like the post-conviction court, we are unable to determine what beneficial evidence Akard believes would have been presented to the jury if his trial counsel had successfully requested the trial court to replay the recording of the 911 call for the jury.[3]

### 14. Type of Paper Exhibits Printed On

[39] Akard claims that his trial counsel provided ineffective assistance by failing to ensure that certain exhibits were printed on glossy photograph paper rather than plain copy paper. Specifically, Akard argues that "[t]he fact that the photographs were printed on flat white copy machine or printer paper prejudiced Akard instead of glossy photograph paper since the images are from digital photographs." Appellant's Br. p. 17. Akard does not explain how he could possibly be prejudiced by printing the photographs on copy paper rather than glossy photograph paper, stating only "Contrast, shading and quality." Appellant's Br. p. 17. Akard also argues that the fact that these photographs were printed on white copy machine paper rather than glossy photograph paper proves that his trial counsel failed to check the authenticity of the exhibits. Akard, however, has presented no evidence supporting this argument and has failed to produce any evidence suggesting how he was prejudiced by his

---

[3] To the extent that Akard appears to argue that the recording of the 911 call was not properly preserved by the State, he points to no evidence that the recording was not properly preserved. He merely seems to claim that he was unable to do so in preparing for the underlying post-conviction proceedings.

counsel's actions in this regard. Upon review, we are unable to see how Akard could have possibly been prejudiced by having the exhibits printed on copy machine paper rather than glossy photograph paper. Akard, therefore, has failed to demonstrate that his trial counsel provided ineffective assistance in this regard.

### 15. Potential Plea Possibilities

[40] Akard further claims that his trial counsel provided ineffective assistance by failing to explore potential plea possibilities. In raising this claim on appeal, Akard asserts that his counsel failed to fully explore potential plea offers, to adequately advise Akard on an alleged plea offered by the State, or to present a counter-offer to the State. Akard, however, does not present any evidence supporting his claim that his trial counsel was somehow responsible for Akard's failure to accept the plea offered by the State. Likewise, he does not present any evidence indicating that the tender of a counter-offer would have been successful.

[41] Akard's trial counsel presented an affidavit to the post-conviction court. In this affidavit, Akard's trial counsel averred that:

> The State initially tendered a plea offer which would have mitigated petitioner's sentence considerably. Petitioner was aware of this offer and my advice to accept it, but rejected the offer and the tender expired.

Appellant's App. p. 248. Akard's trial counsel further averred as follows:

24.    In my opinion, petitioner should have taken the plea offer tendered by the State, which I advised him to do.

25.    The decision to go to trial was petitioner's alone, and he was in possession of all the necessary information and facts at all stages of the process.

Appellant's App. p. 249.  The post-conviction court denied Akard's claim that his counsel was ineffective in this regard, finding as follows:

There is no evidence that counsel induced the petitioner to proceed to trial.  The Court finds that petitioner had no intention of pleading in this case.  Therefore it is more probable that petitioner instructed counsel himself that he wished to submit the case to a jury.

Appellant's Amd. App. p. 187.  Akard does not present any evidence to refute trial counsel's averment on appeal.  Therefore, based on this record, we are unable to conclude that Akard has demonstrated that his trial counsel provided ineffective assistance in this regard.

### 16.  *Actions During Sidebar Discussions*

[42]    Akard's claim relating to the alleged ineffective assistance rendered by his trial counsel during sidebar discussions is unclear, to say the least.  Akard appears to assert that given the fact that the trial court allegedly would not permit Akard to speak for himself during sidebar discussions, his trial counsel should have sought information or advice from Akard and presented such information to the trial court during said sidebar discussions.  Akard, however, has presented no argument relating to how he was prejudiced by his counsel's alleged failure in

this regard. As such, Akard has failed to demonstrate that his trial counsel rendered ineffective assistance in this regard.

### 17. Jury Instructions

[43]  Akard also appears to claim that his trial counsel provided ineffective assistance by failing to object to the proffered jury instructions. Akard, however, did not raise this claim in this PCR petition.

> Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal. Ind. P-C.R. 1(8); *Allen v. State*, 749 N.E.2d 1158 (Ind. 2001), *cert denied*. The failure to raise an alleged error in the petition waives the right to raise that issue on appeal. *Badelle v. State*, 754 N.E.2d 510[, 528 (Ind. Ct. App. 2001)].

*Koons v. State*, 771 N.E.2d 685, 691-92 (Ind. Ct. App. 2002). Thus, because Akard failed to raise this issue before the post-conviction court, the argument is waived and he may not present the argument on appeal.

### 18. Unsigned Verdict Form

[44]  Akard last claims that his trial counsel provided ineffective assistance by failing to demand that the verdict form on one of the counts be signed by the jury foreman. Akard presents an unsigned copy of the verdict form in his appendix. However, he failed to designate the entire trial court record on appeal, so it is impossible for this court to determine whether the trial court record includes a signed verdict form. Further, Akard cannot show prejudice as the outcome of Akard's trial is not affected by the trial court record allegedly including an

unsigned verdict form. Any defect in the form allegedly being left unsigned would be in form only. Further, if Akard's trial counsel would have requested that the form be signed, the outcome of Akard's trial would not have been affected as it would have been within the trial court's discretionary powers to send the form back to the jury foreman with the request that the jury foreman sign the form. *See generally, American Home Products Corp. v. Vance*, 173 Ind. App. 631, 634, 365 N.E.2d 780, 782 (1977) (providing that if a verdict form is defective, the trial court would be operating well within its discretionary limits in sending the form back to the jury and mandating it be returned in proper form).

### *Conclusion Relating to Claims of Ineffective Assistance of Trial Counsel*

[45] In sum, we conclude that Akard has failed to prove that he suffered ineffective assistance of trial counsel. We therefore affirm the judgment of the post-conviction court in this regard.

# B. Ineffective Assistance of Appellate Counsel

[46] The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the petitioner must show appellate counsel was deficient in her performance and that the deficiency resulted in prejudice. *Overstreet*, 877 N.E.2d at 165 (citing *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997)). Again, to satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so

serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* (citing *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To show prejudice, the petitioner must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* (citing *McCary*, 761 N.E.2d at 392). "When raised on collateral review, ineffective assistance claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Id.* (citing *McCary*, 761 N.E.2d at 193-95).

[47] Similar to his claims relating to trial counsel, we note that Akard's claims relating to the alleged ineffective assistance rendered by his appellate counsel are not raised in a particularly clear manner. That being said, we will do our best to decipher Akard's arguments on appeal. In alleging ineffective assistance of appellate counsel, Akard seems to claim that his counsel rendered ineffective assistance by failing to adequately argue issues brought on appeal and failing to seek rehearing of the Indiana Supreme Court's decision. Akard also makes an argument that counsel provided ineffective assistance in some way relating to Akard's pre-*Miranda*[4] silence.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

### 1. Failing to Adequately Argue Issues Brought on Appeal

### i. Challenge to Admission of Pornographic Images

[48]  Akard appears to claim that his appellate counsel provided ineffective assistance by failing to argue that at least one of the images should not have been admitted because of slight discrepancies between A.A.'s initial statement, deposition testimony, and trial testimony. Specifically Akard seems to assert that although A.A. initially stated that the photograph in question depicted Akard having sex with a young child who was dead, A.A. subsequently indicated that she initially thought the man in the photograph looked like Akard and that the child appeared dead. Akard seems to argue that his appellate challenge to the admission of the pornography found on his computer would have been stronger if appellate counsel would have included argument relating to this discrepancy. We cannot agree.

[49]  On appeal, counsel argued that pornographic images were erroneously admitted because the images were unfairly prejudicial. If the images had not been admitted into evidence, the jury would not have heard any discussion about the images, including discussion about whether the child depicted in one of the photographs appeared dead or alive. This discussion, therefore, would not have been relevant at trial. Counsel's approach amounts to a tactical decision, which we will not second guess. *See generally, Reed*, 866 N.E.2d at 769 (providing that we defer to counsel's strategic and tactical decisions).

### ii. Challenge to Magazine Page Depicting Adults Urinating on Each Other

[50] Akard also claims that his appellate counsel provided ineffective assistance with regard to his arguments relating to a torn magazine page found in Akard's apartment that depicted adults urinating on each other. Appellate counsel challenged the admission of the magazine page, arguing that it was not relevant to the charges levied against Akard. It is unclear what additional argument relating to this piece of evidence Akard believes his appellate counsel should have made on appeal. Again, appellate counsel's approach, *i.e.*, arguing the challenged evidence was inadmissible because it was not relevant to the charges levied against Akard, amounts to a tactical decision, which we will not second guess. *See generally, id*. (providing that we defer to counsel's strategic and tactical decisions).

### iii. Sentence Challenge

[51] Akard appears to argue that his appellate counsel provided ineffective assistance in arguing that the imposed ninety-three year sentence was inappropriate. Although it is unclear what Akard believes his counsel should have done differently, Akard seems to assert that the trial court should have ordered his Indiana sentence to run concurrently to his federal sentence. Akard, however, provides no citation to any authority suggesting that running the Indiana sentence concurrently to Akard's federal sentence would have been proper. Akard has failed to demonstrate that he was prejudiced by appellate counsel's representation relating to his sentence.

### iv. Double Jeopardy

[52] Akard also appears to argue that his appellate counsel provided ineffective assistance because counsel failed to argue that his convictions violate the prohibitions against double jeopardy on direct appeal. Akard's argument in this regard is unclear, difficult to follow, and lacks cogent reasoning. However, to the extent that we can decipher Akard's arguments, it seems that he is asserting that because he was found guilty of Class B felonies in certain counts rather than Class A felonies, the jury must have found that he did not have a deadly weapon, and, as a result, could not have used deadly force against A.A. or A.A. could not have suffered serious bodily injury. This assertion is without merit.

[53] The State charged Akard with numerous crimes, including charges of Class A felony and Class B felony rape and Class A felony and Class B felony criminal deviate conduct, and the jury found Akard guilty of each of the charged offenses. *Akard*, 924 N.E.2d at 206. The fact that the jury found Akard guilty of the Class A felony counts indicates that the jury found that he was either armed with a deadly weapon, used deadly force, or inflicted serious bodily injury to the victim. *See* Indiana Code §§ 35-42-4-1, 35-42-4-2. In addition, the evidence demonstrates that Akard confined A.A. for many hours, during which he battered her, tased her, forced her to take drugs, bound her, gagged her, choked her, punched her, caused her to lose consciousness, and subjected her to numerous sexual assaults while he was armed with a handgun. *Akard*, 924 N.E.2d at 205-06. The evidence also demonstrates that A.A. suffered serious

bodily injury. *Id.* Akard has failed to establish that his appellate counsel performed below acceptable professional norms in this regard.

### v. Aggravating Factors at Sentencing

Furthermore, to the extent that Akard argues that his appellate counsel provided ineffective assistance because counsel allegedly failed to object to the use of "non-convictions" as an aggravating factor considered by the trial court, Akard has failed to make a cogent argument. "'A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.'" *Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009) (quoting *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005), *trans. denied*); *see also* Ind. Appellate Rule 46(A)(8) (requiring that contentions in appellant's briefs be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal). Akard, therefore, has waived this claim by failing to provide a cogent argument in support of his claim.

### 2. Failure to Seek Rehearing

Akard argues that he was prejudiced by his appellate counsel's failure to seek rehearing of the Indiana Supreme Court's decision on direct appeal. Akard's argument in this regard is unclear. Akard cites to no legal authority in support of his argument and his argument lacks cogent reasoning. Accordingly, Akard has waived this challenge on appeal. *See Wingate*, 900 N.E.2d at 475; Ind. Appellate Rule 46(A)(8).

### 3. Claim Relating to Akard's Pre-Miranda Silence

[56]     On appeal, Akard's appellate counsel argued that Akard suffered fundamental error when the State elicited testimony regarding Akard's silence when he was arrested. With respect to the fundamental error claim, this court's decision on direct appeal states as follows:

> Akard's silence while the police were entering his apartment was mentioned four times during trial: briefly during the prosecutor's opening and closing arguments and during the testimony of two police officers in the State's case-in-chief. Questions asked of the two officers were whether Akard made any statements or asked any questions when he was arrested to which both officers responded in the negative.
>
> ****
>
> While Akard argues that this line of testimony violated his constitutional rights, he does not argue how these few references worked to his actual and substantial disadvantage, creating the impossibility of a fair trial. Moreover, the brevity of these references in comparison to the other substantial evidence presented to prove Akard's guilt, including the taser marks on A.A. and the physical evidence found at Akard's apartment corroborating A.A.'s testimony, leads us to the conclusion that the brief mention of his pre-*Miranda* silence does not rise to the level of fundamental error.

*Akard*, 924 N.E.2d at 208-09. This court's conclusion relating to the fundamental error claim was summarily affirmed by the Indiana Supreme Court. *Akard*, 937 N.E.2d at 814. Akard's argument with regard to how counsel provided ineffective assistance with respect to the fundamental error claim is unclear, to say the least. Akard does not present any argument relating

to how he believed appellate counsel should have handled this issue differently on direct appeal. Further, to the extent that Akard is challenging the determination that reference to his pre-*Miranda* silence did not amount to fundamental error, we note that such a challenge would be barred by the doctrine of res judicata. *See Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001) (providing that if an issue was raised but decided adversely on appeal, a post-conviction challenge is barred by the doctrine of res judicata).

### *Conclusion Relating to Claims of Ineffective Assistance of Appellate Counsel*

[57] In sum, we conclude that Akard has failed to prove that he suffered from ineffective assistance of appellate counsel.

## C.  Ineffective Assistance of Post-Conviction Counsel

[58] Akard last contends that his post-conviction counsel provided ineffective assistance by withdrawing from the case without Akard's agreement or acquiescence. The right to counsel in post-conviction proceedings is not guaranteed by either the Sixth Amendment of the United States Constitution or Article I, Section 13 of the Indiana Constitution. *Daniels v. State*, 741 N.E.2d 1177, 1190 (Ind. 2001) (citing *Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989)).

[59] While Akard claims that his post-conviction counsel withdrew from the case without first obtaining Akard's agreement or acquiescence, post-conviction counsel's motion to withdraw her appearance indicates that Akard had filed a *pro-se* petition, expressed his desire to proceed *pro-se*, and waived representation.

Following post-conviction counsel's withdraw, Akard was afforded the opportunity to prepare and present his case. Akard has presented no evidence demonstrating that he was subjected to a procedurally unfair setting as a result of counsel's withdraw. Upon review, we conclude that Akard has failed to establish that he suffered ineffective assistance by his post-conviction counsel.

## Conclusion

[60] In sum, we conclude that Akard did not receive ineffective assistance from his trial, appellate, or post-conviction counsel. Accordingly, we affirm the post-conviction court's denial of Akard's PCR petition.

[61] The judgment of the post-conviction court is affirmed.

May, J., and Crone, J., concur.