**Brian K. McCARY, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S02–0105–PC–00240.

Supreme Court of Indiana.

Jan. 18, 2002.

Susan K. Carpenter, Public Defender of Indiana, Anne–Marie Alward, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Brian McCary, who is serving a forty-year sentence for attempting to kill a police officer, asks for a new trial. He contends that his trial counsel was ineffective, but that question has already been

litigated and is res judicata against him. His claim that his appellate counsel was ineffective is without merit. We affirm the denial of post-conviction relief.

### Facts and Procedural History

On the evening of September 20, 1993, Indianapolis Police Department Officer Anthony Finnell was told at roll call to be on the lookout for a particular blue and white Oldsmobile. As he began patrolling, Officer Finnell spotted the car parked at a convenience store in the vicinity of East 30th Street and North Sherman Drive. He watched as McCary and Antonio Williams entered the car and drove away.

After following them for a short distance, Officer Finnell pulled the vehicle over. McCary jumped from the car while it was still moving and ran off. Finnell called for backup and began to handcuff Williams.

Finnell then heard gunshots coming from the spot where he had last seen McCary. He dropped behind the Oldsmobile for protection, pulling Williams down as well. After six shots were fired, Finnell drew his gun and looked over the car. A man with a similar build and clothing to McCary's looked at Finnell and fled.

McCary ran to a nearby friend's house. There, McCary said that he had been followed by police, leapt from his car, and exchanged gunfire after the police fired first.

The police apprehended McCary as he left the friend's house in a speeding car. McCary lied about his identity, but Williams was brought to the arrest scene and positively identified McCary as the driver of the Oldsmobile. Later that night at the police station, McCary told Officer Finnell, "I wasn't trying to hurt you." (T.R. at 229.)

A jury found McCary guilty of attempted murder, a class A felony;[1] resisting law enforcement, a class D felony;[2] and carrying an unlicensed handgun, a class A misdemeanor.[3] The court sentenced him to concurrent terms, with forty years on the lead charge.

McCary raised three claims on direct appeal, including ineffective assistance of trial counsel. *McCary v. State,* No. 49A02–9412–CR–751, memo. op. at 2, 657 N.E.2d 204 (Ind.Ct.App. Nov. 6, 1995). The Court of Appeals affirmed the conviction.

In his post-conviction challenge, McCary focuses on ineffective assistance of trial and appellate counsel. (Appellant's Br. at 11–12 .) The post-conviction court rejected both claims. The Court of Appeals held for McCary on both and reversed. *McCary v. State,* 739 N.E.2d 193, 201 (Ind. Ct.App.2000). We granted transfer, and now affirm the post-conviction court.

### Post–Conviction Standard of Review

■ A post-conviction procedure is not an opportunity for a "super-appeal." *Ben–Yisrayl v. State,* 729 N.E.2d 102, 105 (Ind. 2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 73, 151 L.Ed.2d 38 (2001). A petitioner who has been denied post-conviction relief appeals from a negative judgment, and he must convince the appellate court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Prowell v. State,* 741 N.E.2d 704 (Ind.2001). In other words, "[t]his Court

---

**1.** Ind.Code Ann. §§ 35–41–5–1, 35–42–1–1 (1998).

**2.** Ind.Code Ann. § 35–44–3–3(b)(1) (West 1998).

**3.** Ind.Code Ann. § 35–47–2–23(c) (West 1998).

will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Miller v. State*, 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied*, 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000) (citations omitted).

### The High Hurdle for Ineffective Assistance Claims

■ A claim of ineffective assistance of counsel must satisfy two components. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052.

■ Few points of law are as clearly established as the principle that "[t]actical or strategic decisions will not support a claim of ineffective assistance." *Sparks v. State*, 499 N.E.2d 738, 739 (Ind.1986). We afford great deference to counsel's discretion to choose strategy and tactics, and strongly presume that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *See Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052.

■ Even the best and brightest criminal defense attorneys may disagree on ideal strategy or the most effective approach in any given case. *Id.* at 689, 104 S.Ct. 2052. Furthermore, "[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind.2001) (citing *Bieghler v. State*, 690 N.E.2d 188, 199 (Ind.1997), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998)).

### I. Effectiveness of Trial Counsel

■ McCary argued on direct appeal that his trial counsel was constitutionally ineffective. *McCary*, memo. op. at 6, 657 N.E.2d 204. His argument failed. *Id.* at 11, 657 N.E.2d 204. He raises this same issue again in his petition for post-conviction relief. (Appellant's Br. at 1.)

It has long been the rule that a defendant who raises a claim of ineffective assistance of trial counsel on direct appeal is foreclosed from subsequently relitigating that claim. *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998), *cert. denied*, 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999). *See also Sawyer v. State*, 679 N.E.2d 1328, 1329 (Ind.1997)("[The defendant], having once litigated his Sixth Amendment claim concerning ineffective assistance of counsel, is not entitled to litigate it again, by alleging different grounds."); *Morris v. State*, 466 N.E.2d 13, 14 (Ind.1984)("Notwithstanding the fact that petitioner gave several additional examples of his counsel's alleged ineffectiveness during the post-conviction hearing, a consideration of the ineffectiveness issue would constitute review of an issue already decided on direct appeal.").

McCary's claim of ineffective assistance of trial counsel is res judicata.

### II. Effectiveness of Appellate Counsel

■ McCary next asserts that his appellate counsel was ineffective for raising the issue of ineffective assistance of trial

counsel on direct appeal. McCary's trial counsel did not call Officer Tracey Murphy as a witness. (T.R. at iii-vii.) McCary asserts that his appellate counsel's failure to "develop[ ] a record to show what the officer would have testified to ... doom[ed] the claim to failure and depriv[ed] McCary of an effective appeal." (Appellant's Br. at 11–12.)

This argument stems from the probable cause affidavit, which was available to both trial and appellate counsel. It stated that Officer Murphy, who was at home and off duty, heard shots and chased but then lost "the suspect." (T.R. at 21.) McCary's defense was that he did indeed flee the police, but did not shoot. (P–C.R. at 255–64.)

McCary's appellate lawyer suggested that the man Officer Murphy saw was most likely Aaron Blanche, whom the defense had portrayed at trial as the probable shooter. (P–C.R. at 208–09, 259, 261.) The Court of Appeals rejected this argument as speculative, though it turned out to be correct.[4]

In *Timberlake*, 753 N.E.2d at 604, we described the burden a party must establish for a claim of this type:

> When the claim of ineffective assistance is directed at appellate counsel for fail-
> ing fully and properly to raise and support a claim of ineffective assistance of trial counsel, a defendant faces a compound burden on postconviction. The postconviction court must conclude that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial. Thus, Timberlake's burden before the postconviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel.

*Id.* (citing *Ben–Yisrayl v. State*, 738 N.E.2d 253, 261–62 (Ind.2000)).

■ Of course, we review appellate counsel's effort in its totality when considering whether a defendant received constitutionally adequate assistance. *Bieghler*, 690 N.E.2d at 194. The forty-three-page brief filed for McCary's appeal raised three major issues: sufficiency of the evidence, improper communication between the court and jury in McCary's absence, and ineffective assistance of counsel. (P–C.R. at 172–214.)

Under the heading of ineffective assistance, appellate counsel argued that trial counsel was deficient in three respects: by

---

4. The Court of Appeals said:
   McCary has failed to set forth the prospective results of a more thorough investigation. McCary speculates as to what certain witnesses may have said if they had been interviewed and acknowledges that "[p]erhaps trial counsel interviewed these witnesses and found nothing, so elected not to explore the matter, but perhaps he did not. On the record available here, we cannot know." Having failed to demonstrate what a more thorough investigation would have revealed, McCary has failed to establish that he suffered prejudice as a result of the allegedly inadequate investigation, and his claim of ineffective assistance of counsel in this regard is without merit.

   McCary contends that trial counsel rendered ineffective assistance in failing to call certain witnesses at trial. Beyond mere speculation, McCary has not set forth favorable testimony that would have been elicited from persons who were not called as witnesses. Therefore, as with the first allegation of ineffective assistance, McCary has not demonstrated that he was prejudiced by the charged defects.
   *McCary*, memo. op. at 7, 657 N.E.2d 204 (internal citations omitted). At the post-conviction proceeding, Officer Murphy verified that the man he saw with a gun that night was, indeed, Blanche. (P–C.R. at 141, 144, 153.)

(1) failing to conduct an adequate investigation, (2) failing to interview and call certain witnesses, and (3) failing to respond properly to the communications between the court and jury during jury deliberations. (P–C.R. at 286.) Appellate counsel also argued that another attorney specially appointed to represent McCary during a hearing on a pro se motion to correct error was ineffective.[5] (P–C.R. at 205, 289.)

The heart of McCary's claim about his appellate lawyer is that counsel should not have raised the issue of trial counsel's ineffective assistance during the direct appeal because insufficient facts were available about Officer Murphy to make the claim. The brief from that appeal, however, contradicts this argument:

> Consideration of the affidavit for probable cause yields further concern with regard to witnesses who were not summoned. The affidavit states that an Officer Murphy who lives in the area heard the shots, came out of his home, and gave chase to "the suspect", losing him in the "area of 2800 North Gale." We know from McCary, Castle and Tamara Johnson that her address was 3053 North Olney—north of 30th Street. We also know that McCary's flight began in the alley east of Sherman and just a few doors south of 30th Street, technically in the 2900 block. We also know that Aaron Blanche had been in the area, had a gun and turned up; shortly after the shooting, at LaToya Harrison's house at 2835 North Gale near the middle of the block where Officer Murphy was said to have lost the suspect he was chasing— the area of 2800 Gale near 28th and Gale. The result of this analysis is the question "Why didn't Murphy testify?" His testimony, it would seem, would

> have made clear, when taken with other evidence that was heard by the jury, that it was improbable that the person Murphy saw was McCary and, at the same time, more probable than not that the person was Aaron Blanche, a man we know had a gun.

> On the record available here, we cannot know why Murphy did not testify nor why the matter was not raised on cross of the police witnesses with knowledge of this case.

(Appellant's Br. at 6–7) (internal citations omitted). McCary's appellate lawyer thus had a fair amount of evidence available on Murphy's encounter.

The record also demonstrated to McCary's appellate lawyer the considerable effort trial counsel made in pointing to Blanche as the perpetrator. For instance, the defense called Latoya Harrison, who lived near the site of the attempted murder. (T.R. at 424.) She testified that Blanche arrived on her doorstep that night, scared and covered with burrs as if he had just run through bushes or a field. (T.R. at 425–26.) Blanche used Harrison's telephone twice, and Blanche gave Harrison's friend a handgun to keep for him until he picked it up early the following morning. (T.R. at 426–29.)

Thus, the only fact about Officer Murphy that was not available when the appellate lawyer chose to argue trial counsel's ineffective assistance was Officer Murphy's confirmation during the post-conviction proceedings that it was Blanche whom he had seen. This was, of course, a concrete piece of additional information. But even McCary's trial counsel, testifying with the benefit of hindsight during the post-conviction proceeding, thought it had so little probative value that he might not have called Officer Murphy even if he had

---

**5.** In the motion, McCary claimed that the prosecution should have disclosed the results of a police-administered gunshot residue test, but the only evidence of such a test was McCary's own word, which was not enough. (P–C.R. at 205, 289.)

known it was Blanche Officer Murphy had seen.[6]

The post-conviction court found that appellate counsel's performance did not deprive McCary of effective assistance of counsel on direct appeal. The facts in this record do not point unerringly to the opposite conclusion, the standard required for relief.

### Conclusion

We affirm the denial of post-conviction relief.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

6. McCary's trial attorney testified at the post-conviction proceeding as follows:

Q. Did you interview Officer Murphy?
A. No.
Q. Had you discovered that Officer Murphy had seen a suspect coming from the field in the alley with a gun and that he could identify that person and that that person wasn't McCary, is it fair to say you would have called him as a defense witness?
A. Not necessarily.
Q. Would you explain your answer?
A. Why? It's 30th and Sherman and a guy was found with a gun only in the general area. I mean, how many guns do you think are there in that area. I don't know that there's much connection.
Q. Okay. Had you known that Officer Murphy could identify Mr. Blanche as the individual that he saw in the alley, would that change your answer?
A. Well I think [McCary] testified that th[ere] might have been a guy who had a gun in the area and so we presented it that way.
Q. Yes. So is it fair to say that if your client's position it's not me, it's Mr. Blanche and you have a police officer who's willing to say he saw Mr. Blanche with a gun running from the field in the

alley matching the description, are you telling this Judge that you would not have called Officer Murphy as a defense witness?
A. I'm saying it didn't make that much difference.
Q. Pardon me.
A. I'm saying it didn't make that much difference.
[McCARY'S ATTORNEY]: Okay. That's all I have.
CROSS–EXAMINATION, QUESTIONS BY [STATE]:
Q. Mr. Rose, that last answer suggests to me—please correct me if I'm wrong, that you concluded as a matter of strategy or tactics that there was no solid value in pursuing Officer Murphy as a witness?
A. Not particularly.
Q. Is it a fair statement that you assessed his value as simply one who could say he saw some other individual with a gun in the same general geographic area as the incident your client was charged with?
A. That's right.
Q. You did make argument on that matter and bring light to that matter at trial in this cause, did you not?
A. Yeah.
(P–C.R. at 160–62.) Even knowing that Murphy had seen Blanche did not impress McCary's trial counsel.