## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 13 2016, 6:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Victoria Christ
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Swartz,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 13, 2016

Court of Appeals Case No.
49A05-1512-PC-2131

Appeal from the Marion Superior Court

The Honorable Jeffrey L. Marchal, Judge *Pro Tempore*

Trial Court Cause No.
49G06-0606-PC-116078

**Bradford, Judge.**

# Case Summary

[1] In June of 2006, Appellee-Respondent the State of Indiana (the "State") charged Appellant-Petitioner Christopher Swartz with murder. Swartz was found guilty following a three-day jury trial. On June 14, 2007, the trial court sentenced Swartz to a sixty-year term of imprisonment. Swartz appealed, challenging both his conviction and the appropriateness of his sentence. On February 25, 2008, we affirmed Swartz's conviction and sentence.

[2] Swartz filed a *pro se* petition for post-conviction relief ("PCR") in June of 2008. Swartz, by counsel, subsequently filed an amended PCR petition in February of 2015. On November 12, 2015, the post-conviction court issued an order denying Swartz's petition. Swartz appealed, arguing that the post-conviction court erroneously found that he did not receive ineffective assistance of trial or appellate counsel. Concluding that the post-conviction court did not err in determining that Swartz failed to prove that he suffered ineffective assistance of either trial or appellate counsel, we affirm.

# Facts and Procedural History

[3] Our memorandum decision in Swartz's direct appeal, which was handed down on February 25, 2008, instructs us to the underlying facts and procedural history leading to this post-conviction appeal.

> Seventeen-year-old José Hernandez was walking toward his aunt's house on the southeast side of Indianapolis at approximately 1:30 a.m. on June 24, 2006. Ken Julian and Tanya Bright were sitting on their front porch talking to Joe Culvahouse when they observed three white men approach a

neighboring convenience store. One of the men, Matt Miller, entered the store and purchased beer. Swartz and Wilburn Barnard remained outside. Miller returned with the beer and the three men began walking on the sidewalk.

Thirty seconds later, Hernandez began crossing the street when Swartz, Barnard, and Miller began heckling him and shouting racial epithets. Hernandez shrugged his shoulders. At that point, Swartz walked away from Miller and Barnard and began taunting Hernandez. Eventually, Hernandez removed his shirt and approached Swartz. Swartz swung his right fist at Hernandez and Hernandez ducked. Swartz told Hernandez that he was going to "f* * * [him] up." Tr. p. 55, 60. Swartz and Hernandez began sparring, although neither landed punches. Miller and Barnard egged Swartz on by telling him to "f* * * him up." *Id*. at 115. Swartz eventually lifted his shirt and asked Hernandez, "What you got?" *Id*. at 122. Hernandez looked down, saw a knife, and jumped back. At that point, Swartz lunged forward and stabbed Hernandez in the chest with the knife. Hernandez staggered away and Swartz turned and ran. Hernandez stumbled to his aunt's front porch, where he collapsed. He later died at Wishard Hospital from a stab wound that punctured his lung and heart.

The State charged Swartz with murder on June 27, 2006. Before trial, Swartz filed two motions in limine seeking to exclude (1) a portion of a 911 audiotape in which the caller referred to Swartz as a "wannabe white boy" and (2) photographs of Swartz's upper torso depicting his tattoos "South," "Side," and "Crazy White Boy." Appellant's App. p. 111, 114. The trial court denied both motions after a hearing.

A three-day jury trial began on May 7, 2007. Swartz renewed his pretrial objections when the photographs and the objectionable portion of the 911 audiotape were admitted into evidence at trial. The jury ultimately found Swartz guilty as charged. The trial

court held a sentencing hearing on June 14, 2007, and sentenced Swartz to sixty years imprisonment.

*Swartz v. State*, 49A04-0707-CR-393, * 1 (Ind. Ct. App. February 25, 2008). On appeal, we affirmed Swartz's conviction and sentence. *Id*. at 6-7.

[4] On June 2, 2008, Swartz filed a *pro-se* PCR petition. In this petition, Swartz claimed that he received ineffective assistance from both his trial and appellate counsel. Swartz, by counsel, filed an amended PCR petition on February 11, 2015. In this amended petition, Swartz renewed his claim that he received ineffective assistance from both his trial and appellate counsel. On November 12, 2015, the post-conviction court issued an order denying Swartz's petition. This appeal follows.

# Discussion and Decision

[5] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

## I. Ineffective Assistance of Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the

adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[8] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

[9] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim

may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

# A. Ineffective Assistance of Trial Counsel

Swartz argues that his trial counsel provided ineffective assistance by failing to object to the tendered jury instructions relating to voluntary manslaughter and by failing to impeach a witness. For its part, the State argues that Swartz's trial counsel did not provide ineffective assistance in either regard.

## *1. Jury Instructions*

With respect to the connection between the crimes of murder and voluntary manslaughter, the Indiana Supreme Court has held that:

> [t]hough we have held that voluntary manslaughter is a lesser-included offense of murder, voluntary manslaughter under the Indiana statute is not a typical example of a lesser-included offense. If a conviction for a crime requires proof of a list of elements, conviction for a lesser-included offense of that crime usually requires proof of some, but not all, of the elements of the first crime. Under the traditional formulation of the test for a lesser-included offense, such a defendant charged with a crime and with a lesser-included offense of that crime who is convicted of the first crime would also by definition have to have committed the lesser-included offense.

> In the case of voluntary manslaughter, however, sudden heat is a mitigating factor, not an element, that the State must prove in addition to the elements of murder. Though counterintuitive, it is logical: if a mitigating factor is present, the offense is certainly lesser than, if not included in, the greater offense. Most importantly, it has long been held in Indiana that a conviction for

voluntary manslaughter is an acquittal of the greater offense of murder.

Thus, even though under Indiana law voluntary manslaughter is a lesser-included offense of murder, a conviction for murder does not mean that a defendant could also have been convicted of voluntary manslaughter. Sudden heat must be separately proved.

*Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008) (footnote and internal citations omitted). The Indiana Supreme Court has further held:

Sudden heat is a mitigating factor in conduct that would otherwise be murder. It is not an element of voluntary manslaughter. When the presence of sudden heat is introduced into the case, the State carries the burden of negating the presence of sudden heat beyond a reasonable doubt. The State may meet the burden by rebutting the defendant's evidence or by affirmatively showing in its case-in-chief the defendant was not acting in sudden heat when the killing occurred.

*Estes v. State*, 451 N.E.2d 313, 314 (Ind. 1983) (internal citation omitted). "Whether or not defendant acted under sudden heat is a question for the jury to resolve." *Id.* (citing *Dunn v. State*, 439 N.E.2d 165, 168 (Ind. 1982)).

[12] In the instant appeal, Swartz alleges that his trial counsel provided ineffective assistance by failing to object to the tendered jury instructions regarding the State's burden of disproving sudden heat. Swartz specifically argues that he was prejudiced by his trial counsel's failure to object to the tendered jury instructions because the tendered instructions failed to instruct the jury that once the issue of sudden heat was raised, the State bore the burden of

disproving sudden heat before the jury could find Swartz guilty of murder. For its part, the State argues that the tendered jury instructions were a correct statement of the law which properly instructed the jury as to the State's burden of proof.

[13] In order to review the propriety of the representation provided by Swartz's trial counsel in this regard, we must review the relevant tendered final jury instructions, which provide as follows:

### Instruction Number 3

Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each element of the crime charged, beyond a reasonable doubt.

The defendant was not required to present any evidence to prove his innocence or to prove or explain anything.

**\*\*\*\***

### Instruction Number 6

The law permits the jury to determine whether the defendant is guilty of certain charges which are not explicitly included in the Information. These additional charges which the jury may consider are called lesser included offenses. They are called lesser included offenses because they are offenses which are very similar to the charged offense. Usually the only difference between the charged offense and the lesser included offense is that the charged offense contains an element that is not required to prove the lesser included offense.

If you find the defendant not guilty of the charged offense, then

you should consider whether the defendant is guilty of the lesser included offenses. As I have already instructed you, the defendant in this case is charged in Count I with Murder, a felony. The crimes of Voluntary Manslaughter, a Class A felony, Voluntary Manslaughter, a Class B felony, Involuntary Manslaughter, a Class C felony and Reckless Homicide, a Class C felony, are lesser included offenses of the crime of Murder, a felony. In a minute I will instruct you concerning the elements which the State is required to prove beyond a reasonable doubt before you may find the defendant guilty of any of the lesser included offenses.

All of the instructions which I have given you and will give you, also apply to your deliberations concerning the lesser included offenses. The State must prove each element of the lesser included offenses beyond a reasonable doubt before you may convict the defendant of any of the lesser included offenses. You must not look upon the lesser included offenses as an opportunity compromise difference among yourselves.

### Instruction Number 7

The crime of murder is defined by statute as follows:

A person who knowingly kills another human being, commits murder, a felony.

To convict the Defendant, the state must have proven each of the following elements:

1. the defendant, Christopher Swartz,
2. did knowingly,
3. kill,
4. another human being, namely: Jose Hernandez.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Murder, a felony, as charged in Count I.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of Murder, a felony, as charged in Count I.

**\*\*\*\***

**Instruction Number 9**

The crime of murder is defined by the statute as follows:

A person who knowingly or intentionally kills another human being, commits murder, a felony.

An included offense of the charge in this case is the crime of voluntary manslaughter which is defined by the statute as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a class A felony if it is committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.

Before you may convict the Defendant of voluntary manslaughter, the State must have proven each of the following elements:

1. the Defendant, Christopher Swartz;
2. knowingly,
3. killed,
4. another human being, namely: Jose Hernandez,
5. and the Defendant was not acting under sudden heat,

6.        and the Defendant killed by means of a deadly weapon.

If the State failed to prove each of the elements 1-4 beyond a reasonable doubt, you must find the Defendant not guilty of murder as charged in Count I.

If the State did prove each of the elements 1-4 and element 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you should find the Defendant guilty of voluntary manslaughter, a Class A felony, a lesser included offense of Count I.

If the State did prove each of elements 1-4 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt elements 5 and 6, you may find the Defendant guilty of voluntary manslaughter, a Class B felony, a lesser included offense of Count I.

If the State did prove each of elements 1-4 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the Defendant guilty of voluntary manslaughter, a Class B felony, a lesser included offense of Count I.

**Instruction Number 10**

The term "sudden heat" means an excited mind. It is a condition that may be created by strong emotion such as fear, anger, rage, sudden resentment, or jealousy. It may be strong enough to obscure the reason of an ordinary person and prevent deliberation and meditation. It can render a person incapable of rational thought.

Appellant's Direct Appeal App. pp. 162, 165-66, 168-70.

[14] Instruction Number 3 clearly indicates that the State bore the burden of proving each element beyond a reasonable doubt and that Swartz was under no obligation to "prove or explain anything." Appellant's Direct Appeal App. p. 162. Instruction Number 9 indicates that if the State failed to prove that Swartz was not acting under sudden heat, then the jury should find Swartz not guilty of voluntary manslaughter. Contrary to Swartz's claim on appeal, we believe that this statement, when considered together with the other relevant instructions, was sufficient to instruct the jury it could only find Swartz guilty of murder if it found that the State met its burden of proving that Swartz did not act in sudden heat.

[15] The question of whether Swartz acted under sudden heat was a question for the jury to resolve. *Estes*, 451 N.E.2d at 314. The question of witness credibility, *i.e.*, whether the State's or Swartz's witnesses were credible, was also a question for the jury to resolve. *See Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008) (providing that the jury, acting as the trier-of-fact, is free to believe whomever it sees fit). As such, it was within the province of the jury to find the version of the events presented by the State's witnesses to be more credible than that presented by the defense witnesses. Review of the record demonstrates that the State presented sufficient evidence in its case-in-chief by which the jury could determine that the State met its burden of proving that Swartz did not act in sudden heat. *See generally, id*. (providing that the State may meet is burden of proving beyond a reasonable doubt that a defendant did not act with sudden heat by rebutting the defendant's evidence or by affirmatively showing in its

case-in-chief that the defendant was not acting in sudden heat when the killing occurred).

[16] We reiterate that in order to prove ineffective assistance of counsel, a defendant must prove that he suffered prejudice as a result of counsel's alleged errors. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is a reasonable probability, *i.e.*, a probability sufficient to undermine confidence in the outcome, that, but for counsel's alleged errors, the result of the proceeding would have been different. *Id.* Because the instructions tendered by the trial court adequately instructed the jury as to the State's burden of proof and the evidence presented was such that the jury, acting as the trier of fact, could find that the State met said burden, we conclude that Swartz has failed to show that he was prejudiced by his trial counsel's representation in this regard. We therefore conclude that Swartz's claim that he was prejudiced by his trial counsel's failure to object to the tendered jury instructions is without merit.

### 2. Failure to Impeach Witness

[17] Swartz also argues that his trial counsel provided ineffective assistance by failing to impeach Culvahouse about prior inconsistent statements he made regarding how many punches were thrown between Swartz and the victim and whether either connected with any of those punches.

[18] The Indiana Supreme Court has repeatedly held that the method of impeaching a witness is a tactical decision and a matter of trial strategy that does not

amount to ineffective assistance. *Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010) (citing *Bivins v. State*, 735 N.E.2d 1116, 1134 (Ind. 2000)). This includes situations where there are inconsistencies between an out-of-court statement made by and the in-court testimony of the witness. Although questioning a witness about such inconsistencies could potentially be useful for impeachment purposes, the Indiana Supreme Court has repeatedly held that a decision not to impeach a witness with such inconsistent statements does not, under normal circumstances, amount to deficient performance because such a decision is a matter of strategy and counsel is permitted to make reasonable judgments in strategy. *See Bivins*, 735 N.E.2d at 1134; *see also Olson v. State*, 563 N.E.2d 565, 568 (Ind. 1990) and *Fugate v. State*, 608 N.E.2d 1370, 1373 (Ind. 1993) (each holding that the method of impeaching witnesses was a tactical decision, a matter of trial strategy, and did not amount to ineffective assistance of counsel).

[19] Review of the record reveals that Culvahouse's deposition testimony that both Swartz and the victim threw multiple punches and that the first punch thrown by each man connected was inconsistent with his trial testimony that while Swartz threw multiple punches, the victim only threw one punch. Culvahouse's deposition testimony that each man made contact with the other was also inconsistent with his trial testimony that the punch thrown by the victim did not make contact with Swartz. However, although inconsistent regarding the number of punches thrown by each man and whether these punches connected, Culvahouse's deposition and trial testimony were seemingly consistent in all other regards. Specifically, Culvahouse consistently

testified both in his deposition and at trial that Swartz initiated contact between the men by first engaging the victim, Swartz taunted the victim, the victim did not verbally respond to Swartz's taunts, Swartz threw the first punch, and only after Swartz threw this punch did the victim respond by also throwing at least one punch. Culvahouse's deposition and trial testimony were also consistent in stating that the victim had fallen backwards and appeared to be retreating before Swartz pulled out his knife and stabbed the victim.

[20] Review of the record also reveals that trial counsel did, in fact, attempt to impeach Culvahouse by questioning him about other seemingly prior inconsistent statements. Further, in an attempt to tarnish Culvahouse's credibility, Culvahouse was questioned about his criminal history which included prior convictions for burglary, possession of stolen property, and check deception. However, despite these potential credibility issues, the jury was in the best position to judge the truthfulness of Culvahouse's testimony, which was consistent with the testimony of numerous other witnesses. *See Klaff*, 884 N.E.2d at 274.

[21] Swartz argues that additional impeachment of Culvahouse would have, in some way, diminished the credibility of some of the witnesses who testified for the State because there was testimony that the witnesses in question had taken oxycontin and had potentially drank alcohol on the date in question. However, we observe that while the consumption of alcohol or use of drugs may indeed affect the credibility of a witness, drug and alcohol use was an issue affecting all witnesses, *i.e.*, those testifying for the State and for the defense, in this case.

Swartz fails to establish how an additional attempt to impeach Culvahouse would have put his credibility in greater question or would have impacted the jury's credibility determination of the other witnesses who testified at trial.

[22] Again, trial counsel placed Culvahouse's credibility at issue during trial. Having already placed Culvahouse's credibility at issue, trial counsel made the tactical decision not to attempt to further impeach Culvahouse with regard to the inconsistencies in his deposition and trial testimony regarding the number of punches thrown between Swartz and the victim and whether any of the punches connected. This approach seems reasonable given that Culvahouse's trial testimony about the events in question was largely consistent with that provided by numerous other witnesses. As such, we agree with the post-conviction court's determination that trial counsel's decision to forgo further attempts to impeach Culvahouse was a reasonable tactical and strategic decision. Swartz has failed to prove that his trial counsel's tactical decision not to attempt to further impeach Culvahouse amounted to deficient performance. We therefore conclude that Swartz has failed to establish that he suffered ineffective assistance of trial counsel in this regard.

## B. Ineffective Assistance of Appellate Counsel

[23] The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the petitioner must show appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Overstreet v. State*, 877 N.E.2d 144, 165 (Ind. 2007) (citing *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997)). Again, to satisfy the first prong, the

petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* (citing *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To show prejudice, the petitioner must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* (citing *McCary*, 761 N.E.2d at 392). "When raised on collateral review, ineffective assistance claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Id.* (citing *McCary*, 761 N.E.2d at 193-95).

[24] In alleging ineffective assistance of appellate counsel, Swartz claims that his counsel rendered ineffective assistance by failing to challenge the above-discussed tendered jury instructions on direct appeal. The Indiana Supreme Court has noted that the failure to raise an issue on direct appeal can be a formidable error because of the well-established rule that issues that were or could have been raised on direct appeal are not available for post-conviction review. *See Bieghler*, 690 N.E.2d at 193. Nevertheless, "'[i]neffectiveness is very rarely found in these cases.'" *Id.* (quoting Lissa Griffin, *The Right to Effective Assistance of Appellate Counsel*, 97 W. Va. L.Rev. 1, 25 (1994)) (brackets in original). One explanation for why ineffectiveness is rarely found in these types of cases is that the decision of what issues to raise on appeal is one of the most important strategic decisions to be made by appellate counsel. *Id.*

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). As Justice Jackson noted,

> "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.... [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one."

*Id*. at 752, 103 S.Ct. at 33133 (quoting Justice Robert H. Jackson, *Advocacy Before the United States Supreme Court*, 25 Temple L.Q. 115, 119 (1951)). Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable. *See Smith v. Murray*, 477 U.S. 527, 535-36, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

*Id*. at 193-94.

[25]    The Indiana Supreme Court noted that "[i]n analyzing this sort of case, the Seventh Circuit, under its performance analysis, first looks to see whether the unraised issues were significant and obvious upon the face of the record." *Id*. at 194. "If so, that court then compares these unraised obvious issues to those raised by appellate counsel, finding deficient performance 'only when ignored issues are clearly stronger than those presented.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) (additional citations omitted). The Supreme Court

also noted that when completing this analysis, "the reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." *Id.*

[26] Swartz alleges that his appellate counsel provided ineffective assistance by failing to challenge the propriety of the above-discussed tendered jury instructions on appeal. During the evidentiary hearing on Swartz's PCR petition, Swartz's appellate counsel testified that he raised four different issues on direct appeal. He also noted that his discussions with trial counsel did not raise a clear concern regarding the propriety of the above-mentioned tendered jury instructions, which again were not objected to at trial. Although appellate counsel acknowledged during the evidentiary hearing that he now had some degree of concern regarding the propriety of the jury instructions at issue, appellate counsel indicated that he did not challenge the above-discussed jury instructions on direct appeal because it did not appear that any potential error in the instructions would amount to fundamental error.

[27] Again, the decision of what claims to raise on appeal is one of the most important strategic decisions to be made by appellate counsel and, upon review, we will not second guess appellate counsel's strategic decision as to what claims to raise unless counsel's decisions in this regard were unquestionably unreasonable. *Id.* at 193-94. Given our conclusion that the above-discussed jury instructions correctly instructed the jury as to the State's burden, we cannot

say that a challenge to said instructions was "clearly stronger" than the issues presented by counsel on direct appeal. *See id*. at 194. As such, we conclude that Swartz has failed to prove that appellate counsel provided deficient performance by failing to challenge the propriety of the aforementioned jury instructions on direct appeal. Swartz's claim in this regard is therefore without merit.

# Conclusion

[28] We conclude that Swartz has failed to prove that he suffered ineffective assistance of either trial or appellate counsel. We therefore affirm the judgment of the post-conviction court.

[29] The judgment of the post-conviction court is affirmed.

Bailey, J., and Altice, J., concur.