## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 14 2018, 7:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Mario Joven
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Henry Shorter,
*Appellant-Petitioner,*

v.

State of Indiana,
*Appellee-Respondent.*

June 14, 2018

Court of Appeals Case No.
20A03-1712-PC-2883

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1602-PC-8

**Najam, Judge.**

## Statement of the Case

Henry Shorter appeals the post-conviction court's denial of his petition for post-conviction relief. Shorter raises a single issue for our review, which we restate as whether the post-conviction court's judgment that Shorter did not receive ineffective assistance of trial counsel is clearly erroneous. We affirm.

## Facts and Procedural History

The facts underlying Shorter's convictions for burglary, as a Class A felony; robbery, as a Class B felony; and for being a habitual offender were stated by this Court in his direct appeal:

> On January 8, 2013, Shorter and his fourteen-year-old stepson, L.S., went to the home of Ricky Beaver ("Beaver"). Also at the home was Raymond Cross ("Cross"). Shorter told Beaver and Cross that he had a "lick" for them, which meant to rob someone. When Cross asked where the robbery would occur, Shorter stated that the potential robbery victim was an illicit drug dealer who had money, drugs, and a safe, but who did not carry a firearm. Shorter was referring to Willie Warren ("Warren"), who[m] he referred to as "Woodchuck." Cross and Beaver agreed to rob Warren, and Beaver already knew where Warren lived.
>
> Shorter drove L.S., Beaver, and Cross in a Jeep owned by one of their acquaintances to the apartment complex where Warren lived. In the vehicle, the four discussed their plan for the robbery. Each participant had a ski mask, except for Shorter. When they arrived at the apartment complex, Shorter parked the Jeep near Warren's apartment. Cross, Beaver, and L.S. put on their masks and got out of the vehicle and went to Warren's apartment. Shorter remained in the Jeep.

Cross knocked on the door of Warren's apartment, and a woman opened the door. Beaver then pulled out a handgun, pushed the door open, and ordered the woman to lie face down on the couch. Beaver went into Warren's bedroom, where Warren was with another woman. Beaver started to rummage around the room while Cross and L.S. remained near the front door. Beaver struck Warren in the head with the gun while asking him "where the stuff was at." Beaver eventually left the bedroom, telling his companions that he couldn't find any of the drugs, money, or the safe mentioned by Shorter. After a search of the kitchen revealed nothing, Cross told Beaver that they should leave.

In the meantime, a young boy came running out of a back bedroom to be with the woman lying on the couch. At some point, this woman telephoned the police. When Cross told Beaver again that they should leave, Beaver grabbed a laptop computer, and the men ran back to the Jeep and fled the scene at a high rate of speed. Cross asked Shorter and Beaver why there had been no drugs in the apartment, and Shorter responded, "they must have just picked stuff up." Before the four men could return to Beaver's house, however, they were stopped by the police, who had been dispatched to the scene of the robbery and were looking for the vehicle used by the robbers. The police arrested Shorter, T.S., Cross, and Beaver, and found in the Jeep the stolen laptop computer, the ski masks used by the robbers, and the handgun used by Beaver, which was a BB gun, not a firearm.

On January 15, 2013, the State charged Shorter with Class B felony robbery while armed with a deadly weapon. The State later added a charge of Class A felony burglary. Following a jury trial held on August 4-6, 2014, the jury found Shorter guilty as charged. Shorter then admitted to being an habitual offender.

*Shorter v. State*, No. 20A05-1409-CR-438, 2015 WL 2170370, at *1-2 (Ind. Ct. App. May 7, 2015) (citations to the record omitted).

[3] On direct appeal, Shorter argued only that his sixty-year aggregate sentence was inappropriate in light of the nature of the offenses and his character. We affirmed his sentence. However, we remanded with instructions for the trial court to correctly attach the habitual offender enhancement to Shorter's robbery conviction.

[4] Thereafter, Shorter filed his amended petition for post-conviction relief. In that petition, Shorter alleged that his trial counsel, Christopher Crawford, had rendered ineffective assistance when he had failed to adequately cross-examine Cross during Shorter's jury trial. In particular, Shorter alleged that Crawford had failed to impeach Cross at the jury trial with a pretrial affidavit Cross had prepared in which Cross had stated that neither he nor Shorter knew of Beaver's plan to commit burglary and robbery on the night of the offenses.

[5] Following an evidentiary hearing at which Crawford and Cross both testified, the post-conviction court rejected Shorter's argument. In particular, the court found and concluded as follows:

> 15. . . . Crawford . . . testified that his particular defense was lack of *mens rea*—that [Shorter] had no knowledge of any criminal plan and was merely the driver of the vehicle. Specifically, Crawford explained in detail the trial defense strategy he used: 1) that [Shorter] never entered the apartment in which the occupants were robbed; 2) that there were serious issues with the State's witnesses' identification of the suspects;

and 3) that [Shorter] did not knowingly participate in the crime because he allegedly had no knowledge that a robbery was to occur in the apartment as [Shorter] was merely the driver of the vehicle, and [Shorter] stayed in the vehicle the entire time the robbery occurred.

\* \* \*

17.    [Shorter] also alleges that Crawford was ineffective because he inadequately cross[-]examined co-defendant Raymond Cross.  At the post[-]conviction hearing, Crawford testified that he did, in fact, cross[-]examine Raymond Cross by asking him about his prior criminal record, including impeachable crimes of dishonesty, about Ricky Beaver's involvement in the robbery, and questioning him in such a way that might lead the jury to conclude that the crime was committed only by Raymond Cross and Ricky Beaver, not [Shorter].

18.    Additionally, while the Court considered the exhibits admitted by [Shorter] at the post[-]conviction hearing in support of [Shorter's] contention that Crawford omitted relevant defense documents . . . , in light of the totality of the evidence, the Court finds this argument is without merit.  During cross[-]examination at the post[-]conviction hearing, Raymond Cross acknowledged that[,] from the moment he was first interviewed by Elkhart Police Department detectives, through the jury trial, he had presented multiple[,] different versions of how the robbery allegedly happened.  Raymond Cross admitted that he was interviewed by Detective Carl Conway on two separate occasions, and that his story regarding [Shorter's] involvement in the robbery changed between interviews.  Raymond Cross admitted that his statements in the . . . Affidavit contradicted the sworn statements he had given Detective Conway and his own jury trial testimony.  In sum, the veracity of Raymond Cross' testimony at the post[-]conviction hearing that [Shorter] was not

involved in the robbery is clearly diminished by the testimony that he had given [that described] at least three different versions of the events. It is not reasonable that the Court would consider only the story told during the post[-]conviction hearing as true.

19. The Court's conclusion is bolstered by the fact that the State introduced a copy of an incident report written by a corrections officer at the Elkhart County Correctional Facility demonstrating that[,] on January 13, 2014, Raymond Cross was found to have committed the institutional infraction of "trafficking" because he was caught attempting to provide the subject Affidavit to another inmate in order to get the same delivered to a notary, when he had already had the opportunity to have the document notarized. This does not make sense to the Court and further brings the credibility of the testimony of Raymond Cross into question.

20. Finally, during the post[-]conviction hearing, attorney Crawford testified that he was very deliberate in what cross[-]examination questions he asked Raymond Cross because he was unsure what his answers would be. Crawford stated that he did not want to completely discredit Raymond Cross' jury trial testimony because some statements were favorable to [Shorter], but a more thorough cross[-]examination might have "clouded things more" and may have done more harm than good. Essentially, Crawford used his professional judgment in choosing how to handle cross[-]examination of Raymond Cross. For all these reasons, the Court cannot find that attorney Crawford was in any way ineffective for choosing not to rely on or utilize questionable documents in his defense of [Shorter], or in his cross[-]examination of Raymond Cross at trial.

Appellant's App. Vol. 2 at 86-89. The court then denied Shorter's petition for post-conviction relief, and this appeal ensued.

## Discussion and Decision

Shorter appeals the post-conviction court's denial of his petition for post-conviction relief. As our Supreme Court has stated:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017).

In particular, Shorter asserts that he was denied the effective assistance of trial counsel.

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance:

representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 682.

[8] Shorter argues that Crawford rendered ineffective assistance when he did not impeach Cross using Cross' pretrial affidavit, in which Cross had stated that neither he nor Shorter knew of Beaver's plan to commit burglary and robbery the night of the offenses. According to Shorter, no reasonable counsel would have refused to impeach Cross using the affidavit because Cross' trial testimony that the burglary and robbery were Shorter's initial ideas was the only evidence that demonstrated Shorter's knowledge of the offenses. As such, Shorter continues, Crawford should have taken all measures to discredit Cross, and Crawford's failure to do so resulted in a trial outcome that would not have occurred otherwise. We cannot agree.

[9] Crawford made a reasonable strategic decision to not use Cross' affidavit. "[T]actical or strategic decisions will not support a claim of ineffective assistance," and "we afford great deference to trial counsel's discretion to choose strategy and tactics." *Id.* at 684 (quotation marks omitted). Here, there

is no question that Cross lacked credibility. As the post-conviction court found, Cross gave multiple, different versions of the events. Crawford attacked Cross' credibility during Shorter's jury trial, albeit through questions relating to Cross' prior convictions for crimes of dishonesty rather than through the use of the affidavit. During the post-conviction hearing, Crawford further testified that Cross' recollection of the circumstances surrounding the offenses was "all over the place," Tr. at 23, that Crawford "didn't know what Mr. Cross was going to say" to the jury, id. at 12, and that Crawford was concerned that the use of the affidavit "would do more harm than good" and could "backfire" on Shorter, id. at 30, 33.

[10] But Crawford also testified that Cross had some favorable trial testimony for Shorter. For example, during the trial Cross testified that he had no knowledge that Beaver had a BB gun on his person "until they're walking up the steps." Id. at 27-28. During that same time, Shorter was in the car, and Crawford argued to the jury that that testimony supported the defense theory that Shorter would have had "no knowledge" that the offenses were about to occur. Id. Thus, Crawford "wanted to use" some of Cross' statements but also "didn't want to use them at the same time because his credibility was certainly an issue." Id. at 28. In other words, Crawford strategically sought to "walk a line" with Cross during the cross-examination. Id. at 53-54.

[11] The use of the affidavit would not have been consistent with Crawford's strategy, and, indeed, the affidavit could have backfired on that strategy. Had Crawford attempted to use the affidavit, in which Cross had stated that Shorter

had no knowledge of the offenses, to further emphasize Cross' lack of credibility, the jury could well have concluded that Cross' statements in the affidavit were false statements. As Crawford said during the post-conviction hearing, had the affidavit been before the jurors, "maybe they see this as simply another situation of Mr. Cross trying to help Mr. Shorter out," or perhaps the affidavit "is . . . going to cloud things more and likely [make] them . . . think something wrong as it relates to Mr. Shorter or his knowledge." *Id.* at 32, 34. Those readily available conclusions would have damaged Shorter's defense and rendered Cross' favorable trial testimony useless.

[12] Further, the evidence produced at the post-conviction hearing demonstrated that the circumstances surrounding Cross' creation of the affidavit were highly suspicious—he had been found in possession of the affidavit while incarcerated, contrary to the facility's policies, and when discovered Cross stated that he had wanted to have the affidavit notarized, though he had already had the opportunity to notarize it. And Shorter and Cross were incarcerated in the same facility at the time. While Crawford testified at the post-conviction hearing that he did not think Shorter had knowledge of Cross' affidavit during that time, he acknowledged that the circumstances surrounding the affidavit's creation had a "what do you want me to say" appearance, and Crawford "knew there was no way I wanted to hear that coming back for the jury . . . ." *Id.* at 35-36.

[13] In sum, Shorter did not receive ineffective assistance from Crawford. Rather, Crawford used his professional judgment and employed a reasonable defense

strategy when he chose to not use the affidavit in his cross-examination of Cross. Accordingly, we affirm the post-conviction court's denial of Shorter's petition for post-conviction relief.

[14] Affirmed.

Robb, J., and Altice, J., concur.